516 A.2d 752

COMMONWEALTH of Pennsylvania

v.

Angel R. MOLINA, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 3, 1986.

Filed Oct. 24, 1986.

30

Peter D. Bludman, Philadelphia, for appellant.

Maxine Stotland, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, OLSZEWSKI and BECK, JJ.

OLSZEWSKI, Judge:

This appeal follows judgment of sentence for aggravated assault. Appellant, Angel Molina, was tried and convicted by a jury in the shooting of Monserate Quiles. We affirm the judgment of sentence.

On the evening of June 18, 1982, appellant visited his neighbors, Monserate Quiles and Olga Cuevas, husband and wife. Trial witnesses presented two stories. First, accord-

ing to Quiles (the victim), appellant flirted with his wife. Angered, Quiles followed appellant home when appellant left. Quiles testified that he had a knife in his back pocket, which he used to open boxes at work, and a wrench in his hand. Quiles further testified that he would have used the wrench to defend himself if attacked, but stated that he did not threaten appellant with it. Quiles knocked on appellant's door and a few minutes later, appellant emerged from his home holding a gun. Appellant pushed Quiles' wife, who was standing at the bottom of the steps, and fired two shots, one of which struck Quiles in the neck.

According to defense witnesses, appellant shot in self-defense. Appellant denied flirting with Quiles' wife, Olga Cuevas. He stated that he left Quiles' house and went home to bed. About a half hour later someone knocked on appellant's door. Appellant went downstairs, opened the door and saw Quiles holding a knife-like object. According to appellant, Quiles said, "I came here to kill you because you got fresh with my wife." (N.T. p. 122). Appellant then closed the door, went upstairs and told his daughter to call the police. When fifteen minutes passed and the police had not arrived, appellant got his gun, went out on the steps and called to Pablo Melendez who was on the sidewalk near appellant's house. Quiles then approached appellant and, threatening to kill him, lunged at him with the knife. At that point, Pablo Melendez knocked the knife out of Quiles' hand. When Quiles retrieved the knife, appellant fired one shot.

In November of 1982, a jury convicted appellant of aggravated assault and possession of an instrument of crime. At the sentencing hearing held following the denial of post-trial motions, the trial court refused to apply the mandatory minimum sentence of five years' imprisonment for aggravated assault committed with a firearm, as required by Section 9712 of the Mandatory Sentencing Act, 42 Pa.Cons. Stat.Ann.Sec. 9712 (Purdon 1982). Instead, the court imposed probation for both convictions. Following denial of its motion to modify sentence, the Commonwealth filed an

appeal challenging the trial court's refusal to impose the minimum sentence provided by section 9712. On August 2, 1985, a panel of this Court vacated the sentence of probation for aggravated assault and remanded for resentencing. *Commonwealth v. Molina*, 344 Pa.Super. 459, 496 A.2d 1196 (1985).

On February 11, 1986, represented by newly-appointed counsel, appellant appeared before the trial court for resentencing. At that time, new counsel for the appellant reminded the court that he had previously filed a "Petition Averring Ineffectiveness of Trial Counsel" in the nature of a petition under the Post-Conviction Hearing Act, and indicated that he desired a hearing on the petition prior to any resentencing. However, because appellant had not yet exhausted his appellate rights, the trial court denied the petition as untimely, and imposed the mandatory minimum sentence for aggravated assault committed with a firearm of five-to-ten years of imprisonment.[1] This appeal timely followed.

Appellant makes numerous allegations challenging his trial counsel's effectiveness. The trial court did not hold a hearing on these claims. In such cases, the appellate court is to evaluate the ineffectiveness claims and decide whether they have merit; if they have no merit, an evidentiary hearing is unnecessary and the unfounded allegations should be rejected and dismissed. *Commonwealth v. Clemmons*, 505 Pa. 356, 361, 479 A.2d 955, 957 (1984).

With this in mind we turn to the standards which govern our review of appellant's claims. The law presumes that counsel is effective and places upon appellant the burden of establishing his counsel's ineffectiveness. *Commonwealth v. Floyd*, 506 Pa. 85, 90, 484 A.2d 365, 367 (1984); *Commonwealth v. Dunbar*, 503 Pa. 590, 596, 470 A.2d 74, 77 (1983). We remain guided by the standards first articulated in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967):

1. At the same time the trial court suspended sentence on the conviction for possession of an instrument of crime.

(C)ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record ... (T)he balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis.

*Id.*, 427 Pa. at 604–605, 235 A.2d at 352–353. *See Commonwealth v. Anderson*, 501 Pa. 275, 461 A.2d 208 (1983). Moreover, it is only when the claim which has been foregone is of arguable merit that further inquiry must be made into the basis for counsel's decision not to pursue the matter. *Commonwealth v. Hubbard*, 472 Pa. 259, 278, 372 A.2d 687, 696 (1977). Finally, even where appellant establishes his counsel's shortcomings, he must show that counsel's ineffectiveness so prejudiced his case that he was deprived of a fair trial. *Commonwealth v. Pierce*, 345 Pa.Super. 324, 329, 498 A.2d 423, 426 (1985) (en banc). This Court has stated that appellant must show that "the alternatives not chosen (by counsel) offered a potential for success *substantially* greater than the tactics actually utilized, resulting in prejudice to the defendant." *Commonwealth v. Garvin*, 335 Pa.Super. 560, 566, 485 A.2d 36, 39 (1984) (emphasis added). A review of the record applying the foregoing analysis compels us to reject each of appellant's ineffectiveness claims.

■ Appellant's allegations focus on trial counsel's alleged failure to present adequately his defense of self-defense. To avail oneself of deadly force for self-protection, three factors must be found to exist. First, the actor must have reasonably believed himself to be in imminent danger of death or serious bodily harm, and that it was necessary to use deadly force against the victim to prevent such harm. Second, the actor must have been free from fault in provoking or continuing the difficulty which resulted in the slay-

ing.[2]  Third, the actor must have violated no duty to retreat. 18 Pa.Cons.Stat.Ann.Sec. 505 (Purdon 1983); *Commonwealth v. Brown*, 491 Pa. 507, 512, 421 A.2d 660, 662 (1980). Appellant argues that his trial counsel could have established these three elements of justifiable self-defense.

■ In connection with the third element, appellant contends that his trial counsel was ineffective for failing to show that appellant fired from his doorway and therefore had no duty to retreat.  Specifically, asserts appellant, one has no duty to retreat in his dwelling and a doorway is part of a dwelling; therefore, trial counsel should have demonstrated that appellant shot from his doorway.  We find this allegation meritless.  While we agree that one has no duty to retreat if standing in his doorway, *see Commonwealth v. Jackson*, 467 Pa. 183, 192, 355 A.2d 572, 576 (1976), the testimony placed appellant outside his home at the time Quiles was shot.  Appellant himself testified that he was standing on the steps located outside his front door.  Both appellant's wife and Pablo Melendez, defense witnesses, placed appellant on the second step from the top of this stairway.  The record is clear that Quiles was also outside, somewhere in front of appellant's house, when he was shot. In light of this evidence, trial counsel cannot be faulted for failing to show that appellant fired from his doorway.[3]

■ Appellant also alleges counsel's ineffectiveness for failing to request the court to instruct the jury that the doorway is part of a dwelling.[4]  This claim is meritless as well.  The record indicates that, consistent with the testimo-

2.  We recently addressed this factor in *Commonwealth v. Alvin*, 357 Pa.Super. 509, 516 A.2d 376 (*en banc*), holding that the trial judge did not err in instructing the jury that, in order to justify the use of deadly force, the evidence must establish that the actor was free from fault in provoking or continuing the difficulty which resulted in the injury.

3.  We note that trial counsel did attempt, at several points, to emphasize that appellant shot from *in front of* his doorway by eliciting testimony that appellant was standing at, and never left, his doorstep. (N.T. pp. 50, 96, 108, 116).

4.  The trial judge did instruct the jury that there is a duty to retreat except in one's own home, and that the sidewalk is not part of one's home.  (N.T. p. 181).

ny at trial, appellant's counsel did request an instruction explaining that the doorstep is considered part of a house.[5] The trial judge, however, refused counsel's request.[6]

Appellant makes several ineffectiveness claims relating to the tactics utilized to establish the first element, that appellant reasonably believed he was in danger prior to firing at Quiles. We must reject these claims, however, because we find that each of the alleged omissions was within the realm of sound trial tactics. *See Commonwealth v. Mizell,* 493 Pa. 161, 164, 425 A.2d 424, 426 (1981) (Trial counsel inherently have broad discretion to determine the course of defense tactics employed.).

■ First, appellant argues ineffectiveness because his trial counsel failed to display to the jury the weapon allegedly held by Quiles at the time Quiles was shot. Trial counsel should have introduced the weapon, appellant claims, to show the jury its lethal quality. The record indicates that, while trial counsel did not display the weapon, he did elicit testimony describing it. Defense witnesses called it a knife or a sword, or described it to be like a knife or a sword, indicating that it was long, narrow and pointy at the end. (N.T. pp. 97, 107, 110, 122, 144). Even on cross-examination of Quiles, trial counsel elicited that it was long and thin with two little points at the end. (N.T. p. 35). Significantly, although appellant believed it to be a knife or a sword, prosecution witnesses testified that the alleged weapon was in fact a wrench. (N.T. pp. 29, 41). As a result, showing it to the jury could have diminished the effect of testimony by defense witnesses referring to it as a

5. After the trial judge completed his charge to the jury, appellant's trial counsel stated:

> Your Honor, all the evidence points to the fact that, you know, what happened occurred on his doorstep. You mentioned that this occurred on the sidewalk. Would that be a point to clarify, you know, explaining, because your doorstep is considered part of your house. (N.T. p. 185).

6. Whether the trial judge properly refused to allow such an instruction is not at issue here. Therefore, we need not decide whether one standing on steps outside his doorway has a duty to retreat prior to shooting in self-defense.

knife or a sword. Accordingly, the record demonstrates that trial counsel had a reasonable basis designed to effectuate appellant's interests when he declined to introduce the alleged weapon into evidence.

■ Appellant alleges counsel's ineffectiveness in failing to ask two police officers who arrived on the scene after the shooting if they observed a weapon in Quiles' hand. At trial, defense witnesses asserted that Quiles either held or was retrieving the alleged weapon at the time he was shot. (N.T. pp. 95, 108, 124). Prosecution witnesses stated, to the contrary, that the wrench was taken from Quiles' hand before appellant opened his door and emerged with a gun. (N.T. pp. 36, 41). If the prosecution's version was correct, Quiles could not have threatened appellant with any weapon immediately before appellant fired, thereby disproving appellant's self-defense claim. Therefore, while testimony that Quiles held a weapon after being shot would have helped appellant's case, testimony that no weapon was observed, either in Quiles' hand or close to his body, would have seriously harmed it. Again, the record demonstrates a reasonable basis for counsel's strategy.[7]

■ Appellant asserts counsel's ineffectiveness for neglecting to show the extent to which Quiles threatened appellant either in his opening or closing statements or during cross-examination of the prosecution's witnesses. We observe first that appellant's trial counsel elicited testimony, during direct examination of defense witnesses, which presented the nature, extent and timing of the alleged threats by Quiles. We note next that trial counsel sufficiently described and discussed the purported threats in both his opening and closing statements. Finally, while the record indicates that trial counsel did not cross-examine prosecution witnesses about Quiles' alleged threats, we find he had a reasonable basis for declining to do so. *See*

7. Even if an officer had testified that he observed a weapon in Quiles' hand after the shooting, appellant's trial counsel still would have been required to establish that Quiles threatened appellant with it immediately before appellant fired.

*Commonwealth v. Ramsey,* 259 Pa.Super. 240, 251, 393 A.2d 806, 812 (1978) (The scope and vigor of cross-examination is a matter which falls within the ambit of sound trial strategy to be exercised by trial counsel alone.). The prosecution witnesses, Quiles and his wife, denied that Quiles ever threatened appellant. Thus, counsel could reasonably have anticipated that, if cross-examined about any alleged threats, Quiles and his wife would have repeated for the jury their version of the events. For these reasons, trial counsel was not ineffective in demonstrating the extent to which Quiles threatened appellant prior to the shooting.

■ Appellant makes several miscellaneous allegations challenging counsel's acts or omissions at trial. Appellant argues that trial counsel failed to establish adequately on direct examination of appellant the extent to which appellant was an upstanding, law-abiding citizen. The record reveals, however, that appellant's trial counsel questioned appellant about his background, including his past employment, the length of his marriage and his education. (N.T. p. 120). Most importantly, trial counsel asked appellant whether he had "ever had any run-ins with the law before this," to which appellant responded, "No. This is the first time." (N.T. p. 120). Consequently, we find this allegation to be unsupported by the record and therefore meritless.

■. Appellant alleges ineffectiveness for failure to call other witnesses to the incident to testify at trial. In seeking to establish ineffectiveness on this basis, "appellant must show (1) the identity of the witnesses, (2) that counsel knew of the existence of the witnesses, (3) the material evidence that the witnesses would have provided, and (4) the manner in which the witnesses would have been helpful to his cause." *Commonwealth v. Polk,* 347 Pa.Super. 265, 273, 500 A.2d 825, 829 (1985). Because appellant has failed to allege any of these elements, this claim is patently frivolous.

■ Finally, appellant claims trial counsel should have requested the court to order the Commonwealth to

reveal the statements of its witnesses, made prior to trial, so that the defense could better prepare for cross-examination. Appellant fails to indicate, however, what in any prior statement would have been helpful to appellant. "Mere allegations of ineffectiveness standing alone on direct appeal will not warrant an evidentiary hearing if this Court is not presented with facts sufficient to support the claim." *Commonwealth v. Cottman*, 327 Pa.Super. 453, 460, 476 A.2d 40, 43 (1984). Because this claim is little more than a bare allegation, we reject it as well.

Appellant makes additional allegations in his brief. We have reviewed each of these arguments thoroughly and are convinced that they lack merit.

Judgment of sentence affirmed.